# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# ST. JOSEPH DIVISION

CARL CURTIS FISH,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION;

    Defendant.

No. 5:19-06114-CV-RK

## ORDER

Before the Court is Plaintiff Carl Curtis Fish's appeal brought under 42 U.S.C. § 405(g) seeking review of Defendant Commissioner of Social Security Administration's ("SSA") denial of disability benefits as rendered in a decision by an Administrative Law Judge ("ALJ"). For the reasons below, the decision of the ALJ is **REVERSED and REMANDED**.

### Standard of Review

The Court's review of the ALJ's decision to deny disability benefits is limited to determining if the decision "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008)). "Substantial evidence is less than a preponderance of the evidence, but is 'such relevant evidence as a reasonable mind would find adequate to support the [ALJ's] conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). In determining whether existing evidence is substantial, the Court takes into account "evidence that detracts from the [ALJ's] decision as well as evidence that supports it." *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) (citation omitted). "If the ALJ's decision is supported by substantial evidence, [the Court] may not reverse even if substantial evidence would support the opposite outcome or [the Court] would have decided differently." *Smith v. Colvin*, 756 F.3d 621, 625 (8th Cir. 2014) (citing *Davis*, 239 F.3d at 966). The Court does not "re-weigh the evidence presented to the ALJ." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Baldwin v. Barnhart*, 349 F.3d

549, 555 (8th Cir. 2003)). The Court must "defer heavily to the findings and conclusions of the [ALJ]." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (citation omitted).

## Discussion

By way of overview, the ALJ found Fish to have the following severe impairments: degenerative disc disease of the lumbar spine; minimal degenerative changes of the right hip; major depressive disorder, recurrent, without psychotic features; generalized anxiety disorder, mild; alcohol dependence, severe, reported to be in very early remission; and marijuana dependence. The ALJ found Fish's chronic obstructive pulmonary disease ("COPD"), asthma, hand numbness, and tenderness not medically determinable. However, the ALJ found that none of Fish's impairments, whether considered alone or in combination, meet or medically equal the criteria of one of the listed impairments in 20 CFR Pt. 404, Subpt. P, App. 1 ("Listing"). Additionally, the ALJ found that despite his limitations, Fish retained the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with limitations. He can lift, carry, push, and pull up to twenty pounds occasionally and ten pounds frequently; stand and/or walk six hours in an eight-hour workday; and sit six hours in an eight-hour workday. He can occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs. He should never climb ladders, ropes, or scaffolds. His balancing is limited to flat surfaces. He should never be exposed to unprotected heights, hazardous machinery, extreme cold, and vibration. The claimant is able to understand, remember, and carry out simple instructions that can be learned in thirty days or less. He can occasionally interact with the public, co-workers, and supervisors. The claimant would miss more than two days of work per month with substance use. Although the ALJ found that Fish is unable to perform any past relevant work, the ALJ found that considering Fish's age, education, work experience, and RFC, Fish can perform jobs that exist in significant numbers in the national economy.

On appeal, Fish argues the ALJ erred because the physical RFC was not supported by substantial evidence, the mental RFC was not supported by substantial evidence, and the ALJ erred in assessing Fish's substance abuse. The Court will address each in turn.

**I. The ALJ's Physical RFC was Not Supported by Substantial Evidence**

First, Fish argues the physical RFC is unsupported by substantial evidence. Specifically, Fish argues the opinions of Dr. Horwitz and Dr. Debroy, which were afforded little and partial weight

2

respectively by the ALJ, do not constitute substantial evidence for the physical limitations provided in the RFC.

ALJs are tasked with evaluating the evidence taken as a whole, resolving any inconsistencies, and formulating an RFC finding that reflects a claimant's functional limitations, as consistent with the evidence. 20 C.F.R. §§ 404.1545, 404.1546. "It is the function of the [ALJ] to weigh conflicting evidence and to resolve disagreements among physicians." *Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014) (citing *Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007)); *see also Finch v. Astrue*, 547 F.3d 933, 936 (8th Cir. 2008) (same) (citing *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007)). However, "[b]ecause a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (quotation and citation omitted). "The ALJ may not simply draw his own inferences about plaintiff's functional ability from medical reports." *Id.* (quotation and citation omitted).

Here, there were two medical opinions as to Fish's physical limitations: the opinions of Dr. Horowitz and Dr. Debroy. The ALJ discounted the opinions of Dr. Horwitz and afforded the opinions little weight. (Tr. 18.) The Court finds substantial evidence existed to discount Dr. Horwitz's opinions. For instance, while Dr. Horwitz diagnosed Fish with right hip and right knee osteoarthritis and opined that Fish would need a cane to ambulate, x-rays taken less than one month later revealed a normal right knee and mild degenerative joint disease of the right hip. (Tr. 19, 438, 440-41.) The ALJ further noted that Fish was noted to have normal gait and station, was ambulating well with the use of a cane, that Fish was told surgery would not improve his pain, and that he was given a right knee brace even though the knee was noted as stable. (Tr. 19; *see also* Tr. 516, 698.)

As to the opinion of Dr. Debroy, the ALJ afforded this opinion partial weight. However, Dr. Debroy did not examine or treat Fish. As a non-examining, non-treating State agency physician, Dr. Debroy's opinions are not substantial evidence.[1] *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) ("By contrast, the opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence.") (quotation and citation omitted); *Metz v. Shalala*, 49 F.3d 374 (8th Cir. 1995) ("We have stated that the opinion of a consulting physician who examines a claimant once does not constitute substantial evidence.")

---

[1] Plaintiff filed his claim in January 2017 before the rules in 20 C.F.R. § 404.1520c took effect.

3

(citing *Hancock v. Secretary*, 603 F.2d 739, 740 (8th Cir. 1979)). Additionally, Dr. Debroy issued his opinions more than a year and a half prior to the ALJ's decision and Dr. Debroy was unaware of certain x-rays, MRIs, and other exams. (*see* Tr. 476, 489, 516, 687.) Thus, Dr. Debroy's opinions, do not constitute substantial evidence to support the physical RFC. *Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995) (finding opinions did not constitute substantial evidence where they failed to take into consideration the entire record).

Although there was substantial evidence to discount the opinions of Dr. Horwitz and afford partial weight to the opinions of Dr. Debroy, the record contains no opinions, amounting to substantial evidence, regarding Fish's capacity and ability to work. *Spackman v. Colvin*, No. 2:14-CV-04125-NKL, 2015 WL 518564, at *3 (W.D. Mo. Feb. 9, 2015). The Court recognizes that while "an ALJ's assessment [of the RFC] must be supported by some medical evidence of the claimant's ability to function in the workplace . . . it is ultimately an administrative determination reserved to the Commissioner." *Id.* (quoting *Cox*, 495 F.3d at 619 (8th Cir.2007)). However, as in *Spackman*, the record contains insufficient evidence for the ALJ to reach an RFC determination absent additional medical opinions. *Id.* (citing *Wadsworth v. Astrue*, 2011 WL 900993 (W.D. Mo. March 15, 2011) (reversing and remanding the ALJ's decision when the ALJ discounted the treating physician's opinion and the record contained no other medical evidence to support a determination as to the claimant's RFC)). The fact that additional medical evidence was needed is further evinced by the fact the ALJ scheduled a hearing for October 3, 2018, for the purpose of having a medical expert testify. (Tr. 94.) However, the medical expert never appeared or testified at the hearing. (Tr. 94-99.) Therefore, because the physical portion of the RFC was not supported by substantial evidence, the decision of the ALJ will be reversed and remanded to fully develop the record. *See Brown v. Colvin*, No. 4:14-CV-00288-NKL, 2014 WL 6750041, at *3 (W.D. Mo. Dec. 1, 2014) ("The ALJ has a duty to fully and fairly develop the record, and the ALJ should have sought an opinion from one of Brown's treating physicians or ordered a consultative examination to assess Brown's RFC. ).

## II. The ALJ's Mental RFC was Supported by Substantial Evidence

Fish next argues the ALJ erred by failing to include limitations for mild to moderate limitations in concentration, persistence, or pace in the RFC. Fish's arguments here are without merit.

4

To begin, the ALJ did include some limitations including limiting interactions with the public, co-workers, and supervisors to occasionally and noting the Fish is able to understand, remember, and carry out simple instructions that can be learned in thirty days or less. (Tr. 18.) Additionally, to assess Fish's mental limitations, the ALJ discussed examination evidence, medical opinions from state agency medical consultants Kim Dempsey, PsyD., and Dr. Thomas. (Tr. 21.) Dr. Dempsey opined that Fish was not significantly limited in his ability to carry out very short and simple or detailed instructions, maintaining attention and concentration for extended periods, performing within a schedule or maintaining regular attendance, sustaining an ordinary routine, working in coordination with others, making simple work-related decisions, or completing a normal workday/workweek. (Tr. 109.) Additionally, he had no significant social limitations, but he was moderately limited with respect to changes in the work setting. (Tr. 109-10.) However, as the ALJ noted, she did not have the benefit of reviewing subsequent evidence reflecting Fish's mental health and alcohol abuse, which supported a finding of disability when substance abuse was considered. (Tr. 21.)

Dr. Thomas opined that Fish could understand, remember, and carry out simple instructions. (Tr. 702.) Dr. Thomas also assessed that Fish's paranoia would be a barrier to functional relationships with supervisors, coworkers, and the public; and his ability to adapt to changes would be limited by forgetfulness, depression, anxiety, and paranoia. (Tr. 703.) The ALJ afforded Dr. Thomas' opinion partial weight though. (Tr. 21.) Substantial evidence supports that conclusion. For instance, the record repeatedly notes that Fish denied paranoia, had normal memory, and had good concentration. (Tr. 436, 654, 656, 658.) As such, the ALJ was not required to adopt every opinion Dr. Thomas provided.

The ALJ also discussed opinion evidence from Bill Graham, Ph.D., in connection with a Medicaid application. (Tr. 21.) The ALJ afforded Dr. Graham's opinion little weight. (Tr. 22.) Dr. Graham opined that Fish was markedly limited in nearly every category due to anxiety, panic, confusion when stressed, explosiveness if pressured, poor cognitive functioning, and problem solving. (Tr. 716-18.) He estimated that Fish would be absent from work more than three times a month, and he stated that Fish did not have a substance abuse diagnosis. (Tr. 719.) However, the record clearly demonstrates Fish's drug and alcohol abuse, that Dr. Graham based his opinion on a single examination, and Dr. Graham administered no formal testing. Thus, Dr. Graham's opinion was properly granted little weight as it was inconsistent with the evidence.

The overall record shows that, despite alcohol abuse, Fish was alert, oriented, and well-groomed with good eye contact, clear thought processes, normal memory, and good concentration. (Tr. 436, 507, 510, 513, 516, 524, 656, 658, 660, 664.) He had a pleasant mood, and appropriate speech and affect. (Tr. 510, 516, 656, 658, 660.) In addition, he reported having no hallucinations, paranoia, or panic episodes. (Tr. 654, 656, 658, 660, 664.) Fish reported anxiety due to finances and situational anxiety due to his girlfriend's surgery and taking care of his grandkids. (Tr. 654, 664, 770, 773); *See Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) (finding depression was not severe partially because it was situational in nature). Additionally, his anxiety responded to medication. (Tr. 747, 790). If an impairment is amenable to treatment, it does not support a finding of total disability. *See, e.g., Bernard v. Colvin*, 774 F.3d 482, 488 (8th Cir. 2014). Therefore, substantial evidence supports the ALJ's mental RFC and the ALJ's decision will be affirmed on this point.

**III.     Assessing Fish's Substance Abuse**

Finally, Fish argues the ALJ erred in assessing his substance abuse because there is no medical evidence cited by the ALJ as to his functional limitations absent purported substance abuse. The Court will decline to rule on this issue at this time.

In cases involving drug addiction or alcoholism ("DAA"), the ALJ must determine whether DAA is material to the determination of disability. There is a six-step process to determine whether DAA is material, which are:

> Step one: does the claimant have DAA?: If no, then no DAA materiality determination is necessary. If yes, go to Step two.
>
> Step two: Is the claimant disabled including all impairments, including DAA?: If no, do not determine DAA materiality and deny the claim. If yes, go to step three.
>
> Step three: Is DAA the only impairment? If yes, DAA is material and deny the claim. If no, go to step four.
>
> Step four: Is the other impairment(s) disabling by itself while the claimant is still dependent upon or using drugs/alcohol? If no, DAA is material to disability and deny the claim. If yes, go to step five.
>
> Step five: Does DAA cause or affect the claimant's medically determinable impairment(s)? If no, DAA is not material and allow the claim. If yes, but the other impairment(s) is irreversible or could not improve to the point of non-disability, DAA is not material and allow the claim. If yes, and DAA could be material, go to step six.

6

Step six: Would the other impairment(s) improve to the point of non-disability in the absence of DAA? If yes, DAA is material and deny the claim. If no, DAA is not material and allow the claim.

*Whittle v. Berryhill*, No. 4:18-CV-04095-VLD, 2019 WL 2124247, at *28–29 (D.S.D. May 15, 2019) (citing SSR 13-2p, § 5). A reconsideration of Plaintiff's physical impairments could affect the disability determination with or without DAA. Thus, because the ALJ's reconsideration of the physical impairments may alter a determination under the DAA steps, the Court will decline to rule on this issue at this time. On remand, the ALJ should reconsider Fish's DAA and its affect on a disability determination.

## Conclusion

Having carefully reviewed the record before the Court and the parties' submissions on appeal, the Court concludes that the ALJ's decision as a whole is not supported by substantial evidence.

IT IS THEREFORE ORDERED that the decision of the ALJ is **REVERSED and REMANDED**. On remand, the ALJ shall reconsider Fish's physical impairments and fully develop the record. Because such reconsideration may affect the ALJ's determination on DAA, the ALJ shall reconsider Fish's substance abuse as well.

**IT IS SO ORDERED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: September 24, 2020